IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| HARRISON COUNTY, MISSISSIPPI; HANCOCK COUNTY, MISSISSIPPI; CITY OF BILOXI, MISSISSIPPI; CITY OF D'IBERVILLE, MISSISSIPPI; CITY OF WAVELAND, MISSISSIPPI; MISSISSIPPI HOTEL AND LODGING ASSOCIATION; MISSISSIPPI COMMERCIAL FISHERIES UNITED, INC.; PASS CHRISTIAN, MISSISSIPPI; CITY OF DIAMONDHEAD, MISSISSIPPI | PLAINTIFFS |
| v. | CAUSE NO. 1:19cv986-LG-RPM |
| MISSISSIPPI RIVER COMMISSION and U.S. ARMY CORPS OF ENGINEERS | DEFENDANTS |

ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR
JURISDICTIONAL DISCOVERY AND TAKING UNDER
ADVISEMENT ALL OTHER PENDING MOTIONS

**BEFORE THE COURT** is the [16] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim filed by the defendants, Mississippi River Commission ("MRC") and U.S. Army Corps of Engineers ("the Corps"), as well as the [25] Motion for Leave to File Second Amended Complaint and the [50] Second Motion for Jurisdictional Discovery filed by the plaintiffs, Harrison County, Mississippi, Hancock County, Mississippi, City of Biloxi, Mississippi, City of D'Iberville, Mississippi, City of Waveland, Mississippi, Mississippi Hotel and Lodging Association, Mississippi Commercial Fisheries United, Inc., Pass Christian, Mississippi, and City of Diamondhead, Mississippi.  The parties have fully briefed

the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the plaintiffs' request for jurisdictional discovery should be granted. The Court will take all other pending Motions under advisement and will permit the parties to file supplemental briefs regarding the defendants' Motion to Dismiss after the completion of jurisdictional discovery.

## BACKGROUND

The Bonnet Carré Spillway was constructed north of New Orleans, Louisiana, as part of the Mississippi River and Tributaries Project. The Spillway was designed to divert water from the Mississippi River into Lake Pontchartrain in an effort to prevent flooding in the Mississippi Delta. After entering Lake Pontchartrain, the water diverted by the Spillway flows into the Mississippi Sound.

The plaintiffs, which are local governments and businesses operating near the Sound, have sued the Corps, which is responsible for the physical operation of the Mississippi River and Tributaries Project and the Spillway. The plaintiffs have also sued the MRC, which, according to the plaintiffs, is responsible for decisions regarding the operation of the Spillway. The plaintiffs claim that the polluted river water released while the Spillway was open during the spring and summer of 2019 caused damage to the oyster, fishing, and tourism industries on the Mississippi Gulf Coast and resulted in a decrease in tax revenues for local governments.

The plaintiffs have filed their claims pursuant to the Administrative Procedure Act ("APA"). They assert that the Corps and the MRC failed to perform

the full environmental impact analysis required by the National Environmental Policy Act ("NEPA") before deciding to open the Spillway on a more regular basis. In addition, the plaintiffs allege that these defendants failed to supplement the Environmental Impact Statement for the Mississippi River and Tributaries Project "to reflect the changed circumstances and additional impacts resulting from the greater and more damaging Mississippi River flooding and resulting operation of the Bonnet Carré Spillway." (Am. Compl., at 24 (¶73), ECF No. 9). The plaintiffs also claim that the defendants violated the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1855(b)(2), by failing to consult with the Secretary of Commerce before opening the Spillway. They seek a declaratory judgment, preliminary injunction, and permanent injunction that the defendants' alleged violations of NEPA and the Magnuson-Stevens Act constitute a failure to act under the APA, 5 U.S.C. § 706(1).

The defendants filed a Motion to Dismiss, requesting dismissal of the plaintiffs' NEPA claim for lack of jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The defendants also seek dismissal of all of the plaintiffs' claims against MRC for failure to state a claim. The plaintiffs filed a motion seeking permission to file a second amended complaint as well as a motion for permission to conduct jurisdictional discovery. The Court granted the request for jurisdictional discovery to the extent that the defendants were ordered to designate and produce the administrative record. (Order, ECF No. 35). The Court also granted the plaintiffs permission to provide a supplemental brief regarding the

Motion to Dismiss or, if necessary, file a second motion for jurisdictional discovery after review of the administrative record. The motion was denied in all other respects. The defendants produced the administrative record, and the plaintiffs filed their Second Motion for Jurisdictional Discovery. The defendants later supplemented the administrative record, but the plaintiffs continue to assert that discovery is necessary for a determination of the defendants' Motion to Dismiss.

## DISCUSSION

"Federal courts have jurisdiction over lawsuits against the United States and its agencies only to the extent that sovereign immunity has been waived." *Charles v. McHugh,* 613 F. App'x 330, 332 (5th Cir. 2015) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A district court may find a lack of subject matter jurisdiction on either: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 494-95 (5th Cir. 2020). The party responding to the 12(b)(1) motion bears the burden of proof that subject matter jurisdiction exists. *Id.* "Courts must strictly construe all waivers of the federal government's sovereign immunity and must resolve all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

Congress enacted NEPA for the purpose of "promot[ing] efforts which will prevent or eliminate damage to the environment and biosphere[.]" 42 U.S.C. § 4321. To accomplish this, NEPA requires federal agencies to include, inter alia,

> in every recommendation or report on . . . major [f]ederal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, [and] (iii) alternatives to the proposed action[.]

42 U.S.C. § 4332(C).  This statement is referred to as an Environmental Impact Statement ("EIS").  The plaintiffs claim that the Corps violated NEPA by failing to prepare an EIS concerning the impact of opening the Bonnet Carré Spillway.  The Corps argues that there has been no waiver of sovereign immunity as to the plaintiffs' NEPA claim because the plaintiffs have not identified a legally required duty to supplement or amend the EIS concerning the Spillway.

The only potentially applicable waiver of sovereign immunity in this case is the APA, which "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review."  *See Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020); *see also* 5 U.S.C. § 702.  Sovereign immunity is not waived by § 702 of the APA unless there has been "agency action," *Id.* at 321, which is defined to "include[ ] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*."  5 U.S.C. § 551(13) (emphasis added).

The plaintiffs' claims in the present case are based on the Corps' alleged failure to act.  The APA provides relief for failure to act in section 706(1), which requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "Thus, a claim under § 706(1) can

proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 64 (2004).

The defendants first argue that this Court's consideration of the plaintiffs' claim should be limited to the administrative record pursuant to 5 U.S.C. § 706, which provides that the Court is required to review "the whole record or those parts of it cited by a party." The Fifth Circuit has held that supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010).

> Supplementation may be permitted when:
> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, ...
> (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or
> (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* In addition, some courts have held that plaintiffs asserting failure to act claims pursuant to Section 706(1) may rely on materials outside the scope of the administrative record. *See. e.g., Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (holding that federal review of Section 706(1) claims is not confined to the administrative record in existence "at any single point in time, because there is no final agency action to demarcate the limits of the record"). The District Court for the District of Columbia has explained:

-6-

> [I]f an agency fails to act, there is no administrative record for a federal court to review. Therefore, there may well be reason for discovery, since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply . . . after-the-event justifications which may need to be explored by plaintiffs.

*W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) (internal citations and quotation marks omitted); *see also Cobell v. Babbitt*, 91 F. Supp. 2d 1, 38 (D.D.C. 1999) ("Extrinsic evidence is appropriate for consideration when the processes utilized and factors considered by the decisionmaker require further explanation for effective review.")

The defendants also argue that discovery is not necessary because the issue of whether the plaintiffs "have identified a 'legally required' duty to act" is a question of law that does not require factual analysis as to the merits of the plaintiffs' claims. (Def.'s Reply Mot. to Dismiss, at 4, ECF No. 4; see also Def.'s Mem. 2d Mot. Juris. Discovery, at 4, ECF No. 55). However, the plaintiffs claim that the defendants had a duty to supplement the EIS on the Mississippi River and Tributaries Project pursuant to NEPA and two regulations, 33 C.F.R. § 230.6 and 40 C.F.R. § 1502.9(c). NEPA requires "all agencies of the Federal Government" to prepare an EIS prior to taking "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). 33 C.F.R. § 230.6 provides that the following agency actions normally require an EIS: "(a) Feasibility reports for authorization and construction of major projects; (b) Proposed changes in projects which increase size substantially or add additional purposes; and (c) Proposed major changes in the operation and/or maintenance of completed

projects."¹  The other regulation cited by the plaintiffs, 640 C.F.R. § 1502.9(c), requires agencies to supplement an EIS if: "(i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  Under this regulation, "supplementation is necessary only if 'there remains major Federal action to occur,' as that term is used in § 4332(2)(C)."  *SUWA*, 542 U.S. at 73 (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (2004)).  Thus, the determination of whether a supplemental EIS is required "will, of necessity, depend heavily upon the unique factual circumstances of each case."  *Westlands Water Dist. v. U.S. Dep't of Interior, Bureau of Reclamation*, 850 F. Supp. 1388, 1415 (E.D. Cal. 1994).

> To some extent, the finding is based on whether the proposed agency action and its environmental effects were within the contemplation of the original project when adopted or approved.  The inquiry requires a determination of whether plaintiffs have complained of actions which may cause significant degradation of the human environment.

*Id.*  A supplemental EIS is not required if federal action would not change the status quo; therefore, routine operation of a facility does not require supplementation.  *See Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921

---

¹ This regulation further provides that, in lieu of an EIS, district commanders may consider the use of a less intensive environmental assessment (EA) on these types of actions if early studies and coordination show that a particular action is not likely to have a significant impact on the quality of the human environment."  33 C.F.R. § 230.6.  "An EA is a brief document which provides sufficient information to the district commander on potential environmental effects of the proposed action and, if appropriate, its alternatives, for determining whether to prepare an EIS or a FONSI (40 CFR 1508.9)." 33 C.F.R. § 230.10.

F.2d 232, 235 (9th Cir. 1990). Nor is supplementation required "every time new information comes to light after the EIS is finalized. To require otherwise would render agency decision-making intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh*, 490 U.S. at 373.

In their Amended Complaint, the plaintiffs allege that the defendants are opening the Spillway more frequently and for longer periods of time, causing greater damage to the environment, seafood industry, and tourism industry in coastal Mississippi. They further claim that the following actions by the Corps constituted "major federal actions" requiring supplementation of the EIS under NEPA:

> A. The continuing construction and operation of the Mississippi River and Tributaries ["MRT"] Project.
> B. The issuance of the Water Control Plans and other documents governing the operation of the Bonnet Carré Spillway, the Morganza Spillway and Floodway, the Old River Control Complex, and the Birds Point-New Madrid Floodway.
> C. The specific decisions by the Corps of Engineers and the Mississippi River Commission to open the Bonnet Carré Spillway for greatly extended periods of time.

(Pls.' Mem., at 11-12, ECF No. 28.) In the present Motion, the plaintiffs ask for permission to conduct a 30(b)(6) deposition of each defendant. They also ask the Court to enter an order requiring responses to their requests for production of documents, which were attached to the plaintiffs' first Motion for Jurisdictional Discovery as Exhibit 1. (*See* Requests for Production, ECF No. 21-1).

The Court has reviewed the administrative record produced by the defendants, which exceeds 8000 pages. While the plaintiffs' First Amended Complaint concerns operation of the Bonnet Carré Spillway in 2019, the majority of the record contains studies and administrative documents that precede 1999. The only post-2011 documents that appear to relate to recent decisions to open the Bonnet Carré Spillway are various memoranda totaling seventeen pages that were produced as a supplement to the administrative record on September 28, 2020. As a result, the Court finds that the defendants have not provided sufficient information to permit judicial review. In the alternative, this may be a situation in which the defendants' failure to act prevented creation of an administrative record pertinent to the claims pending before the Court.

For these reasons, the Court finds that the plaintiffs should be permitted to conduct jurisdictional discovery concerning the defendants' compliance or lack of compliance with NEPA. Requests pertaining to other statutes, including the Magnuson-Stevens Fishery Conservation and Management Act and the Endangered Species Act, will not be permitted because the defendants' Motion to Dismiss only pertains to the plaintiffs' NEPA claims. The plaintiffs' discovery requests must be narrowly tailored to the precise issue of whether the defendants' operation of the Bonnet Carré Spillway in 2019 was within the contemplation of the original Mississippi River and Tributaries Project when adopted or approved. The plaintiffs' request for jurisdictional discovery is denied in all other respects. All other pending Motions are taken under advisement.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [50] Second Motion for Jurisdictional Discovery filed by the plaintiffs, Harrison County, Mississippi, Hancock County, Mississippi, City of Biloxi, Mississippi, City of D'Iberville, Mississippi, City of Waveland, Mississippi, Mississippi Hotel and Lodging Association, Mississippi Commercial Fisheries United, Inc., Pass Christian, Mississippi, City of Diamondhead, Mississippi, is **GRANTED IN PART AND DENIED IN PART**.  The plaintiffs are granted **60 DAYS** within which to conduct jurisdictional discovery to the extent permitted by this Memorandum Opinion and Order.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [16] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim filed by the defendants, Mississippi River Commission and U.S. Army Corps of Engineers, and the [25] Motion for Leave to File Second Amended Complaint filed by the plaintiffs are **TAKEN UNDER ADVISEMENT**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the plaintiffs are permitted to file a supplemental memorandum in opposition to the defendants' [16] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim on or before February 8, 2021.  The defendants will be permitted to file a reply in support of their Motion on or before February 19, 2021.

**SO ORDERED AND ADJUDGED** this the 20th day of November, 2020.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE