**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**HARRISON COUNTY, MISSISSIPPI, et al.** — **PLAINTIFFS**

**v.** — **CAUSE NO. 1:19cv986-LG-RPM**

**U.S. ARMY CORPS OF ENGINEERS** — **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONSIDERATION OF EXTRA-RECORD EVIDENCE

**BEFORE THE COURT** is the [102] Motion for Consideration of Extra-Record Evidence filed by the plaintiffs: Harrison County, Mississippi, Hancock County, Mississippi, City of Biloxi, Mississippi, City of D'Iberville, Mississippi, City of Waveland, Mississippi, Mississippi Hotel and Lodging Association, Mississippi Commercial Fisheries United, Inc., City of Pass Christian, Mississippi, and City of Diamondhead, Mississippi. The parties have fully briefed the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the plaintiffs' Motion should be granted in part and denied in part.

## BACKGROUND

The U.S. Army Corps of Engineers ("the Corps"), under the direction of the Secretary of the Army and supervision of the Chief of Engineers, is charged with designing and constructing flood control projects, including the Mississippi River and Tributaries Project ("MRT"). *See* 33 U.S.C. § 701b; 33 U.S.C. § 702a. One part

of the MRT, the Bonnet Carré Spillway ("Spillway"), was constructed near Norco, Louisiana. It was designed to divert water from the Mississippi River into Lake Pontchartrain in an effort to prevent flooding in New Orleans. After entering Lake Pontchartrain, the water diverted by the Spillway flows into Lake Borgne and the Mississippi Sound.

The plaintiffs filed this lawsuit against the Corps, claiming that the Corps' more frequent, lengthier openings of the Spillway in recent years have caused significant damages to the environment and economy of the Mississippi Gulf Coast. The plaintiffs filed their claims pursuant to the Administrative Procedure Act ("APA"). They alleged that the Corps failed to perform the full environmental impact analysis required by the National Environmental Policy Act ("NEPA"). They also claimed that the Corps violated the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1855(b)(2), by failing to consult with the Secretary of Commerce before opening the Spillway. The plaintiffs asked the Court to:

> (1) Declare under 28 U.S.C. § 2201 that the Corps of Engineers . . . [is] in violation of NEPA and the Magnuson-Stevens . . . Act; that the Corps of Engineers . . . [has] violated [NEPA] and the Magnuson-Stevens . . . Act; [and]
>
> (2) Order the Corps of Engineers . . . to fully comply with the requirements of NEPA and the Magnuson-Stevens . . . Act with all due haste, pursuant to a schedule established and supervised by the Court . . . .

(1st Am. Compl. at 24, ECF No. 9). In other portions of their First Amended Complaint, the plaintiffs requested "compensation for losses, damages, expenses, attorneys' fees, and costs." (*Id.* at 22, 23).

The Court has dismissed the plaintiffs' NEPA claims with prejudice. The decision is currently on appeal before the United States Court of Appeals for the Fifth Circuit. The parties are now proceeding with the Magnuson-Stevens Act claim. United States Magistrate Judge Robert P. Myers, Jr., entered a [101] Scheduling Order requiring the parties to first file any motions seeking permission to supplement the administrative record or include extra-record evidence. Dispositive motions on the merits are due no later than forty days after entry of an order granting or denying the motion to supplement the record or include extra-record evidence. Nevertheless, Judge Myers "recognize[d] the possibility that certain issues may not be fully contextualized until dispositive motion briefing begins." (Order at 1, ECF No. 101). The plaintiffs have filed the present [102] Motion for Consideration of Extra-Record Evidence.

**DISCUSSION**

The Magnuson-Stevens Act aims to "conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. § 1801(b)(1). The Act provides, "Each Federal agency shall consult with the Secretary [of Commerce] with respect to any action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by such agency that may adversely affect any essential fish habitat identified under this chapter." 16 U.S.C. § 1855(b)(2); 16

U.S.C. § 1802(39). "The term 'essential fish habitat' means those waters and substrate necessary to fish for spawning, breeding, feeding or growth to maturity." 16 U.S.C. § 1802(10).

The plaintiffs allege that the Mississippi Sound, Lake Pontchartrain, and Lake Borgne have been designated as essential fish habitats. In their First Amended Complaint, the plaintiffs assert:

> At a minimum the following actions [by the Corps] constitute actions requiring consultation [with the Secretary of Commerce] on Essential Fish Habitat[s]:
> A. The continuing construction and operation of the Mississippi River and Tributaries Project.
> B. The issuance of the Water Control Plans and other documents governing the operation of the Bonnet Carré Spillway, the Morganza Spillway and Floodway, the Old River Control Complex, and the Birds Point-New Madrid Floodway.
> C. The specific decisions by the Corps of Engineers . . . to open the Bonnet Carré Spillway for extended periods of time.

(1st Am. Compl. at 22, ECF No. 9). The plaintiffs further allege that the Corps' failure to consult with the Secretary of Commerce before these actions constituted an unlawful failure to act under the Administrative Procedure Act, 5 U.S.C. § 706.

Courts reviewing an agency's action under the APA review the whole administrative record or those parts of it cited by a party. 5 U.S.C. § 706. Thus, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). In the present case, the plaintiffs ask the Court to permit them to submit extra-record evidence as well as some evidence that they assert the Corps should have included in the administrative record.

The plaintiffs first argue that this Court can consider evidence outside the administrative record because this is a "failure to act" case filed pursuant to 5 U.S.C. § 706(1). The plaintiffs explain:

> The basic factual question in this case is whether there was "any action" undertaken by the Corps that "may adversely affect any essential fish habitat." 16 U.S.C. § 1855(b)(2). However, there is no documented decision by the Corps on these issues. There was no public notice seeking comment on a decision about these issues, and no decision document. There is instead the complete lack of a decision, or any articulation of reasoning by the agency.

(Pls.' Memo. at 7, ECF No. 103). The Corps disputes the plaintiffs' argument that the record review rule is inapplicable to failure to act claims.

There is a split of authority as to whether failure to act claims are limited to the administrative record. Most cases that have held that failure to act claims are not limited to the record pertain to NEPA claims or either rely upon a NEPA case, *Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000). In *Dombeck*, the court held, "In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Dombeck*, 222 F.3d at 560. In fact, some courts, including the Fifth Circuit, have adopted a "NEPA exception" to the administrative record rule. *Davis Mountains Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin.*, 116 F. App'x 3, 12 (5th Cir. 2004). This is because

> [d]eviation from this "record rule" occurs with more frequency in the review of agency NEPA decisions than in the review of other agency decisions. . . . This occurs because NEPA imposes a duty on federal agencies to compile a comprehensive analysis of the potential environmental impacts of its proposed action, and review of whether

> the agency's analysis has satisfied this duty often requires a court to look at evidence outside the administrative record.

*Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14-15 (2d Cir. 1997), *quoted in Sierra Club v. Peterson*, 185 F.3d 349, 369-70 (5th Cir. 1999), *vacated on other grounds on reh'g*, 228 F.3d 559 (5th Cir. 2000).

In the present case, the plaintiffs' NEPA claims have been dismissed and are on appeal. As for the remaining Magnuson-Stevens Act claim, the plaintiffs ask the Court to determine whether certain actions of the Corps had the potential to adversely affect any Essential Fish Habitat. Thus, this case, to some degree, will require a review of the Corps' actions. In this circumstance, it is possible that there will be enough information in the record to resolve the merits in this case. For this reason, the Court finds that NEPA cases like *Dombeck* are not persuasive here to the extent those cases hold that failure to act cases are never limited to the record.

Cases that hold that failure to act claims are presumptively restricted to the record primarily rely on the language of the APA. *See, e.g., Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001); *see also Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 128 F. Supp. 2d 762, 767-68 n.8 (E.D. Pa. 2000). After discussing failure to act claims and claims challenging agency action, the APA provides, "In making the foregoing *determinations*, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706 (emphasis added). This Court agrees that the APA appears to generally limit both failure to act claims and claims challenging agency action to the record.

Therefore, consideration of evidence outside the record is not allowed unless the moving party demonstrates "unusual circumstances justifying a departure from the general presumption that review is limited to the record compiled by the agency." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). The following circumstances may warrant consideration of extra-record evidence:

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . .
> (2) the district court need[s] to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or
> (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).[1]

Here, the plaintiffs seek permission to present the following evidence for the Court's consideration: (1) expert testimony of fisheries biologist, Dr. Robert Leaf, concerning the effect of spillway operation on essential fish habitats; (2) scientific literature including but not limited to that referenced in Exhibit 1 to the plaintiffs' [103] Reply; (3) documents produced by the Corps during discovery that allegedly indicate adverse effects on essential fish habitats; (4) information on the Corps' consultation practices under the Endangered Species Act; and (5) evidence that allegedly demonstrates that federal agencies operating dam projects have consulted

[1] Some district courts within the Fifth Circuit have recognized eight circumstances as exceptions to the record rule. *See, e.g., La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 694 (S.D. Tex. 2015). This Court will follow Fifth Circuit precedent and solely consider the *Medina* factors.

under both the Endangered Species Act and the Magnuson-Stevens Act. The plaintiffs argue that this evidence "is admissible to show that the Corps did not consider all the relevant factors, and to explain the science relating to adverse effects on Essential Fish Habitat[s] [caused by] operation of the Bonnet Carré Spillway." (Pls.' Mem. at 118, ECF No. 103).

The Corps counters that the issue presented in this case is whether the Magnuson-Stevens Act even applies to the Spillway and the materials the plaintiffs wish to present would not assist the Court in resolving that question. However, in order to exclude the materials solely on this basis, the Court would have to prematurely delve into the merits of this action.

The Corps next argues that the plaintiffs' requests to produce discovery it received from the Corps and scientific materials are too vague because these requests do not appear to list all of the documents the plaintiffs wish to produce. (Defs.' Mem. at 16-17, ECF No. 104).

The Corps further disputes the plaintiffs' assertion that documents from other agencies and Corps documents related to the Endangered Species Act should be considered here. While the plaintiffs assert that this evidence is relevant, the Corps asserts that the proper standard is necessity, not relevance. *See Camp v. Pitts*, 411 U.S. 138, 143 (1973) (remanding for a determination whether "further explanation [of the agency's action] is *necessary* to a proper assessment of the agency's decision"); *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 247 (5th

Cir. 2006) ("Extra-record evidence may be admitted if necessary to determine whether an agency has adequately considered adverse environmental impacts.").

The Court has reviewed the proposed opinions that Dr. Leaf is expected to provide. At this time, it appears that the merits of this case will involve scientific and technical determinations necessitating the admission of expert testimony. This background information is necessary to determine whether the Corps considered all relevant factors. Therefore, the Court will permit the plaintiffs to submit Dr. Leaf's testimony when the parties file their dispositive motions. The plaintiffs' request to present scientific literature to the Court is not well-taken because it is unlikely that scientific literature will be helpful to the Court absent analysis from an expert witness. Nevertheless, Dr. Leaf may rely on the scientific literature when forming his opinions.

The Court further finds that the plaintiffs can produce the email attached to their Motion as Exhibit 2 for the Court's consideration because it appears to reference impacts to fish habitats. However, to the extent that the plaintiffs seek consideration of any other discovery documents not specifically identified by the plaintiffs by bates-number or exhibit number, that request is denied. The Court cannot evaluate whether documents that it has not seen should have been included in the record, nor should the Court be required to sift through the lengthy administrative record in this case in an attempt to determine which documents the plaintiffs may be referencing.

Actions or documents from agencies other than the Corps will be excluded from consideration. The plaintiffs have not demonstrated that other agencies' consultation under the Endangered Species Act and Magnuson-Stevens Act regarding structures other than the MRT and Spillway are necessary or relevant to the issues presented here.

Corps documents related to the Corps' handling of Spillway and MRT operations under the Endangered Species Act presents a more difficult question.[2] The plaintiffs argue:

> The Corps has on a number of occasions conceded that operation of the Bonnet Carré Spillway fits within the definition of "any action" under the Endangered Species Act by initiating consultation with the U.S. Fish and Wildlife Service. This includes . . . the 2019 openings. . . . This fact is clearly relevant to the question whether the operation of the Spillway fits within the identical term 'any action' for Essential Fish Habitat consultation purposes. The documents evidencing this repeated consultation are relevant evidence for the Corps' own understanding of whether the operation of the Bonnet Carré Spillway fits within the term "any action."

(Pls.' Mem. at 16-17, ECF No. 103). In support of this assertion, the plaintiffs cite a Tenth Circuit case for the proposition that "[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departure." *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1165 (10th Cir. 2002), *as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003); *see also New York Pub. Int. Res. Grp., Inc. v. Johnson*, 427 F.3d

[2] The Court is particularly hesitant to consider the Endangered Species Act in the present case because a separate case is currently pending before this Court related to the Corps' Spillway openings under that statute.

172, 182 (2d Cir. 2005) ("Although past agency practice is not binding precedent, this change of course surely calls into question the EPA's current position."). The plaintiffs have not demonstrated that this principle applies to allegedly conflicting agency action under two different statutes. Out of an abundance of caution, the Court will permit the plaintiffs to present their evidence regarding the Endangered Species Act, which is attached to their Motion as Exhibit 3, during briefing on dispositive motions. The Court will make a final decision regarding the propriety of considering this evidence when the merits are considered, and the parties' arguments are clearer.

**CONCLUSION**

For the foregoing reasons, the plaintiffs will be permitted to present the expert testimony of Dr. Leaf and the documents attached to the plaintiffs' [102] Motion as Exhibits 2 and 3. The plaintiffs' Motion is denied in all other respects.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [102] Motion for Consideration of Extra-Record Evidence filed by the plaintiffs is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED AND ADJUDGED** this the 5th day of July, 2022.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE